IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

      Case No.: 6:24-cr-91-WWB-EJK

EMMANUEL M. ALMONOR,

      Defendant.

      /

## DEFENDANT EMMANUEL ALMONOR'S
## SENTENCING MEMORANDUM

COMES NOW, the Defendant, EMMANUEL M. ALMONOR, by and through his undersigned counsel, and hereby respectfully submits this Sentencing Memorandum for this Honorable Court's consideration. Mr. Almonor respectfully requests that this Court grant a downward departure/variance from his advisory sentencing guidelines based on the factors found in 18 U.S.C. § 3553(a) and mitigation provided within this memorandum. Mr. Almonor does not excuse or minimize his conduct or the severity of his crime in making such a request.

## I. PROCEDURAL BACKGROUND

The procedural background of this case is sufficiently outlined in the

Presentence Investigation Report (PSR) (Doc. 214).

## II.    <u>SENTENCING GUIDELINES CALCULATION</u>

Mr. Almonor's PSR calculates his total offense level as a level 29 with a criminal history score of zero, and criminal history category of I. As a result, Mr. Almonor is facing an advisory sentencing guidelines range of 87 to 108 months' imprisonment. However, there is a statutory maximum term of imprisonment of five (5) years on Count One, which makes the guideline term of imprisonment 60 months. As to supervised release based on his guidelines the range is one (1) to three (3) years. There are no unresolved objections.

## III.    <u>REQUEST FOR DOWNWARD VARIANCE</u>

For the reasons set forth below, this Court should grant a downward departure/variance sentence based on Mr. Almonor's acceptance of responsibility, lack of criminal history, as well as other relevant factors of 18 U.S.C. § 3553(a). Mr. Almonor also asks the Court to consider his challenges in his upbringing that included losing his father at a very young age. The Court should further consider his unwavering and vast support from family, friends, and members of the local community.

In the light of his characteristics and other relevant factors of 18 U.S.C. § 3553(a), Mr. Almonor respectfully asks this Court to impose a below-guidelines sentence. The sentence should be sufficient, but not greater than necessary, to comply with the requirements of 18 U.S.C. § 3553(a).

## 1. **The Post-Booker Sentencing Framework**

In the wake of *United States v. Booker*, 543 U.S. 220 (2005), the Federal Sentencing Guidelines are advisory only. Judges now have the power to impose sentences that are *no greater than necessary* to satisfy the statutory purposes of sentencing, to consider all of the characteristics of the offender and circumstances of the offense, and to reject advisory guidelines that are not based on national sentencing data and empirical research. *See Booker*, 543 U.S. 220; *Rita v. United States*, 127 S.Ct. 2456 (2007); *Gall v. United States*, 552 U.S. 38, 50 (2007); *Kimbrough v. United States*, 128 S.Ct. 558 (2007).

A district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," but the court "*may not* presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007) (emphasis added). A district court has the discretion to conclude that the resulting advisory range "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Kimbrough*, 128 S.Ct. at 575 (2007). Though this Court is required to consider the factors under 18 U.S.C. § 3553(a) set forth below, it need not accept the "utter travesty of justice that sometimes results from the Guidelines' fetish with abstract arithmetic." *United States v. Adelson*, 441 F. Supp. 2d 506 (S.D.N.Y. 2006).

In other words, after *Booker*, this Court is unencumbered in its ability "to

consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 552 U.S. at 53 (quoting *Koon v. United States*, 518 U.S. 81 (1996)). In fact, the use of the Guidelines in any manner other than an advisory function violates the defendant's Sixth Amendment rights. *Booker*, 543 U.S. at 244-45 (Part Two, Breyer, J.).

### a) The Factors under 18 U.S.C § 3553(a) weigh in favor of a downward variance from the Sentencing Guidelines Range.

Congress had identified four "purposes" of sentencing: punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C § 3553(a)(2). To achieve these ends, § 3553(a) requires sentencing courts to consider not only the advisory Guidelines range, but also the facts of a specific case through the lens of seven factors including:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;

2. The need for the sentence imposed—

   a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   b. to afford adequate deterrence to criminal conduct;
   c. to protect the public from further crimes of the defendant; and
   d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. The kinds of sentences available;

4. The kinds of sentence and the sentencing range established …;

5. Any pertinent [Sentencing Commission] policy statement…;

6. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7. The need to provide restitution to any victims of the offense. § 3553(a)(1)-(7).

These factors, when applied to Mr. Almonor's case, weigh in favor of a downward variance from the advisory guidelines. Some of which are explained in further detail below, and applied to Mr. Almonor specifically.

### *The Nature and Circumstances of the Offense and the History and Characteristics of Mr. Almonor*

The severity and extent of Mr. Almonor's crime cannot be overstated. This Court must consider the nature of Mr. Almonor's crime. However, this Court must also consider a defendant's personal history and redeeming characteristics when fashioning its sentence. Mr. Almonor has taken full responsibility and realized the significance of his criminal conduct. As Judge Rakoff noted in *United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006), the importance of considering a defendant's redeeming characteristics reaches its zenith at the moment the court determines the sentence to be imposed.

Examining Mr. Almonor's history and characteristics reveals a compassionate individual, one who has a zest for life, a love for his family, friends, and his community; and an unwavering dedication to being a great leader and helper among

5

others. This all started at a very young age for Mr. Almonor, when he lost his father. Being that Mr. Almonor was the only male out of his five siblings, at this very young age he took over the role of being the man of the house, finding odd jobs like mowing yards to help the family income. He took it upon himself to ensure his siblings were taken care of, even walking his sister down the aisle at her wedding since their father could not be there. This continued into his adult life when he took over care for his mother, by supporting her financially so that she was able to stay living independently. Mr. Almonor did not stop at his family, many friends have taken a stance that he has been there for them when they could not go on, he helped in any way he could without questions or passing of judgement, never asking for anything in return. Again, Mr. Almonor did not stop at people he knew, he went out into the community and has played a large role in helping the local homeless population of Orlando. On a monthly basis he would provide food, blankets, and the basic life necessities to all those that needed his help.

Mr. Almonor has such a vast support system that is willing and ready to ensure he stays on the right path. There are several letters attached to this memo from his support system, they describe Mr. Almonor as genuine, caring, kind, a man with integrity, a hard worker, a helper, trustworthy, a leader, a man with so much potential, selfless, reliable, and compassionate; as well as someone they are all seen growth and change in since the start of this matter.

Mr. Almonor scores a zero on his criminal history section and that, even though only one part, shows that Mr. Almonor is not a career criminal and these actions in the instant offense do not define him as a person. Furthermore, since the start of this case Mr. Almonor has shown remorse, and continued to provide proactive assistance, he understands the nature of the offense and has done and will continue to do everything in his power to remedy the situation as best as he can through his own actions.

### The Need for the Sentence Imposed

The Court must impose a sentence that reflects the seriousness of the offense, promotes respect for law and affords adequate deterrence to protect the public from similar conduct on the part of others.  18 U.S.C. § 3553(a).

Although § 3553(a) requires the Court to consider the need for deterrence, studies have shown that there is little to no evidence that supports the notion that a harsher sentence would have any deterrent effect. *See* David Weisburd et al., *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 CRIMINOLOGY 587 (1995); Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 CARDOZO J. CONFLICT RESOL. 421, 448-49 (2007) ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders.").  Indeed, these studies demonstrate that

the deterrent effect of these ever-longer sentences for white collar crime has been minimal. *Id.* While this is not a white-collar crime, the same logic and reasoning still applies.

The theory of general deterrence is based on the flawed premise that lengthy prison sentences deter crime. Over the years, this flawed premise has resulted in the mass incarceration of individuals in the United States. Dr. Oliver Roeder et al., *What Caused the Crime Decline*?, Brennan Center for Just., 22-23 (Feb. 12, 2015), *available at* https://www.brennancenter.org/publication/what-caused-crime-decline. Despite this mass incarceration, studies have shown no correlation between punishment and reductions in crime. *See id.* Finally, in imposing "just punishment" for an offense, the Court should not disregard the additional penalties and hardships that will accompany a felony conviction. *See* Hugh LaFollette, *Collateral Consequences of Punishment: Civil Penalties Accompanying a Formal Punishment*, 22 J. of Applied Phil., 241, 244-46 (2005) (discussing and critiquing on proportionality grounds retributivist justification of collateral consequences).

Mr. Almonor poses a low risk of recidivism based on his lack of prior criminal history, genuine remorse, proactive assistance to the government throughout the pendency of this matter, extreme family and community support, and his acknowledgement of the seriousness of the offenses. As such, a sentence of 60

months of incarceration is unnecessary and would not have any greater specific deterrence effect.

### *The Kinds of Sentences Available and the Sentencing Range Established*

According to Mr. Almonor's PSI a term of probation is not an option, however, a limited incarceration period followed by supervised release is within his guidelines.

Congress established supervised release as part of the Sentencing Reform Act ("SRA") that created the federal sentencing guidelines system. Although similar to parole, which was eliminated by the SRA, a term of supervised release "does not replace a portion of the sentence of imprisonment, but rather is an order of supervision in addition to any term of imprisonment imposed by the court." USSG Ch.7, Pt.A, Subpt.2(b); see also § 212(a)(2), 98 Stat. at 1999. Supervised release serves as a means of rehabilitation, distinct from the goals served by incarceration. *See United States v. Johnson*, 529 U.S. 53, 59 (2000); see also S. REP. NO. 98-225 at 124 (1983) ("primary goal" of supervised release includes "provid[ing] rehabilitation to a defendant who has spent a fairly short period of time in prison for punishment or other purposes but still needs supervision").

In determining whether to impose a term of supervised release not mandated by statute, 18 U.S.C. § 3583 requires a court to consider most, but not all, of the same factors it considers when imposing a term of imprisonment. These factors

include the factors listed in 18 U.S.C. § 3553(a) (Imposition of a sentence), such as the "nature and circumstances of the offense and the history and characteristics of the defendant," deterrence, public safety, rehabilitation, the kind of sentence and sentencing range established for "offenses and offenders" by the Commission, and "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(1), (a)(7), (b)(1).

### *Any Pertinent Sentencing Commission Policy Statements*

The United States Sentencing Commission's policy statements acknowledge that showing remorse and cooperating with the Government can lead to a reduction in sentence, as outlined in the Federal Sentencing Guidelines. Mr. Almonor has shown remorse since the start of this case, not only in his actions but in his willingness to be proactive and cooperate with the Government. More details of said cooperation can be argued at any hearing on sentencing.

Mr. Almonor is also a Zero Point Offender and under the Sentencing Guidelines §4C1.1 there are adjustments that can be made for Zero Point Offenders. Now, Mr. Almonor recognizes that he has been listed as an "organizer" and that the adjustments in the policy have a caveat as to that detail. However, every other element fits Mr. Almonor's case exactly and would qualify him for said adjustments. As clearly it is stated in his PSI that he has a criminal history score of zero.

### *The Need to Provide Restitution to Any Victims of the Offense*

There is a substantial amount of restitution in this case, and for Mr. Almonor

to be able to provide the full restitution to the IRS, the victim in this matter, he would

need to be able to be out of an incarceration capacity so that he is able to generate

an income to fully pay off his restitution.

**b) This Court should grant a downward variance sentence based on Mr. Almonor's extraordinary acceptance of responsibility, post-arrest rehabilitative efforts, and proactive assistance.**

When fashioning a sentence, a district court may consider relevant post-

offense conduct. *See Gall*, 552 U.S. at 600. Thus, a sentencing court can grant a

downward variance in cases of "extraordinary" acceptance of responsibility, even

where a defendant has already received credit for acceptance of responsibility

pursuant to USSG § 3E1.1. *See E.g., United States v. Gardellini*, 545 F.3d 1089,

1095 (D.C. Cir. 2008) (district court properly imposed a below-guidelines sentence

of probation in part because defendant "cooperated with authorities and accepted

responsibility for his crimes to an extraordinary degree"); *United States v. Brown*,

985 F.2d 478, 482-83 (9th Cir. 1993) (sentencing court can depart downward from

the guidelines range if it determines that the two-point reduction did not adequately

reflect acceptance of responsibility); *United States v. Milne*, 384 F. Supp. 2d 1309,

1312 (E.D. Wis. 2005).

For instance, in *United States v. Milne*, a bank fraud case, the district court

recognized that Sentencing Commission promulgated USSG § 5K2.0(d)(2) to prohibit downward departures for acceptance of responsibility beyond those available under USSG § 3E1.1. *Id.* Nevertheless, the court concluded that an additional downward variance was warranted on the facts of the case and reasoned as follows:

> Where appropriate, courts may grant additional consideration to defendants who demonstrate acceptance beyond that necessary to obtain a two or three level reduction under § 3E1.1. This is so because such conduct bears directly on their character, § 3553(a)(1), and on how severe a sentence is necessary to provide deterrence and punishment, § 3553(a)(2). Further, courts should encourage offenders to mitigate their misconduct voluntarily, whether by admitting it, paying restitution or making efforts to address substance abuse, mental health or other problems that contributed to it.

*Id.* at 1312.

Other courts have reached similar conclusions. *United States v. Smith*, 311 F. Supp. 2d 801 (E.D. Wis. 2004) (two-level downward departure granted even though defendant also received offense level reduction for acceptance of responsibility, where defendant demonstrated self-improvement, fundamental change in attitude, and complete withdrawal from criminal drug distribution lifestyle in three years before he was arrested and before he knew he was under investigation); *see also United States v. Kim*, 364 F.3d 1235 (11th Cir. 2004) (payment of $280,000 restitution by defendants, a husband and wife, after they pled guilty was extraordinary enough to justify downward departure from 24 months to probation

and home detention because defendants' conduct demonstrated their sincere remorse and acceptance of responsibility).

In the instant case, Mr. Almonor, has expressed sincere remorse for his criminal conduct and the long-reaching effects that it had on society and for the government. Mr. Almonor has undertaken substantial efforts to thoroughly understand the impact of his crimes, not only on the local community but the effects they could have on a much more widespread scale.

## CONCLUSION

Based on the forgoing reasons, Mr. Almonor respectfully requests that this Court grant a downward variance which would be sufficient, but not greater than necessary, to comply with the requirements of 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/ *Robert I. Mandell*
Robert I. Mandell Esq.
Florida Bar Number 15484
Briana Nicole Fosah, Esq.
Florida Bar Number 1054184
Mandell Law, P.A.
189 S. Orange Ave., Ste. 810
Orlando, FL 32801
Phone: (407) 956-1180
rmandell@fightforyou.org
briana@fightforyou.org
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2025, I electronically filed to forgoing

with the Clerk of Court using the CM/ECF system, which will send a Notice of

Electronic Filing to all parties in this case.

/s/ *Robert I. Mandell*
Robert I. Mandell Esq.
Florida Bar Number 15484