UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case No.: 6:24-CR-91-WWB-EJK |
| | : |
| ADON O. HEMLEY | : |
| | : |

**DEFENDANT ADON O. HEMLEY'S
SENTENCING MEMORANDUM**

COMES NOW, the Defendant, ADON O. HEMLEY, by and through his undersigned counsel, and respectfully files this his sentencing memorandum and in support states as follows:

**I.    Presentence Investigation Report**

The Defendant has no unresolved objections to the factual accuracy of the pre-sentence investigation report.

The Defendant has no unresolved objections to the legal accuracy of the pre-sentence investigation report.

Sentencing Process

In order to arrive at a sentence that is sufficient but not greater than necessary, and to comply with the purposes set forth in paragraph two of Title 18 United States Code Section 3553(a), the Defendant understands this Honorable

Court will first calculate the Defendant's federal sentencing guideline sentence range, next consider any departures based on the criteria set forth in the federal sentencing guidelines from Sections 5K1.1 to 5K3.1, and, finally, consider whether the sentence imposed should be different from either the federal sentencing guideline sentence or the departure sentence (if any), after considering the factors set forth in 18 United States Code Section 3553(a).

- As indicated above, the advisory federal sentencing guideline range as calculated by United States Probation is accurate.
- The district court must consider any departures from the federal sentencing guidelines.
- In this submission, the Defendant posits there is a basis for a downward variance and discusses this request in the next section but understands the minimum mandatory term of imprisonment disallows anything below ten years.

**II.   Downward Variance Request**

Undersigned counsel is very aware this Honorable Court understands Title 18 United States Code Section 3553(a). The Title 18 United States Code Section 3553(a) factors that a district court judge must take into equal consideration to the federal sentencing guidelines are as follows:

- The nature and circumstances of the offense and the history and characteristics of the defendant; 18 United States Code Section 3553(a)(1); and

- The need for the sentence imposed; 18 United States Code Section 3553(a)(2); and

    - to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.
    - to afford adequate deterrence to criminal conduct.
    - to protect the public from further crimes of the defendant.
    - to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

- The kinds of sentences available; 18 United States Code Section 3553(a)(3); and

- The need to avoid unwarranted disparity among defendants with similar records and similar crimes; 18 United States Code Section 3553(a)(6); and

- The need to provide restitution to any victims of the offense. 18 United States Code Section 3553(a)(7).

Prior to the United States Supreme Court decisions in *United States v. Booker*, 543 U.S. 220, 245-67 (2005), *Rita v. United States*, 127 S.Ct. 2456 (2007), *Kimbrough v. United States*, 128 S.Ct. 558 (2007), and *Gall v. United States*, 552 U.S. 38, 53 (2007), the federal sentencing guidelines were mandatory, not advisory, on a federal sentencing judge. As we all know, because of the above

seminal cases, the federal sentencing guidelines are now advisory in nature and equal in weight to the Title 18 United States Code 3553(a) factors.[1]

With that boiler plate legal language out of the way, let us move on to who the Defendant is outside of his criminal actions in this case.

*Personal and Family History*

Adon Hemley was born in Mandeville, Jamaica, where he lived until the age of four. His parents were never married, and his father never resided in the family home. When Adon was four, his mother, grandmother, and he relocated to Miami, Florida. After moving to the United States, Adon's mother had another child, a daughter. Adon recalls his childhood as a positive experience, marked by fun times with friends and sports. Adon is proud of the fact that he became a Naturalized Citizen when he was in the seventh grade. He grew up primarily in Miami and South Florida, in a neighborhood considered dangerous. Although he now recognizes the dangers that surrounded him, as a child, Adon was unaware of them. His mother always protected him and provided for him, ensuring that Adon never went hungry or had to fend for himself. He lived in an apartment with his family until he was 18.

While Adon was never subjected to violence, he did witness domestic violence between his mother and his half-sister's father. This became a problem for

---

[1] Undersigned counsel is aware this Honorable Court is well-versed in this area of the law and will now move forward in this sentencing memorandum to an application of fact and law analysis as a result.

4

Adon when he attempted to intervene and protect his mother. Fortunately, Adon's sister's father moved along and went his own way. Despite the domestic violence in the home, Adon views his childhood as largely positive. At around 10 or 11 years old, Adon met his father for the first time. His father was living in Canada at the time and Adon occasionally visited him there. Although Adon regrets the absence of a stable father figure, he did try to build a relationship with him. Adon later learned that his father had returned to Jamaica after getting into trouble in Canada.

In 2016, Adon left his family home and moved to Orlando to work for Marriott, feeling ready for a new experience. He stayed in Orlando until 2019, when he returned to South Florida.

Although Adon has never been married and has no children, he has been in a committed relationship for about two and a half years. Adon and his girlfriend share a close bond and plan to build a future together. His girlfriend currently lives with him.

<u>Analysis</u>

Adon's personal and family history reveals several key themes, including resilience, adaptability, and a strong sense of family. Born in Jamaica, Adon faced the challenges of adjusting to a new culture and environment when his family moved to the United States. Despite growing up in a rough neighborhood, Adon's

5

narrative reflects that he was somewhat insulated from dangers around him, thanks to the care and stability his mother provided.

The absence of his father during his formative years shaped Adon's sense of identity and left him longing for a stronger male figure in his life. Meeting his father for the first time as a preteen provided some opportunities to form a connection, but the lack of consistency in this relationship left Adon with feelings of regret. His relationship with his father, though limited, influenced his broader understanding of family dynamics and the importance of stability.

Adon's experiences with witnessing domestic violence, while not directed at him, affected his protective instincts and his view of familial roles. His efforts to defend his mother suggest that Adon developed a strong sense of responsibility from an early age, reinforcing his desire to be a supportive partner and, eventually, a father figure himself.

Moving out of his family home in 2016 to work in Orlando marked an important transition for Adon, highlighting his readiness to embrace independence and take charge of his own life. His subsequent return to South Florida suggests a desire for proximity to family and a familiar environment, balancing his need for independence with his familial ties.

Adon's current committed relationship reflects emotional maturity and a stable personal life, offering him a source of support and a partner with whom he

can envision a future. Becoming a naturalized citizen further underscores Adon's adaptability and his full integration into American society, which has helped solidify his sense of belonging and identity.

Overall, Adon's personal and family history reflects a trajectory of growth, emotional strength, and the determination to overcome challenges, particularly in the face of unstable familial dynamics.

*Educational History*

Adon graduated from Coral Reef Senior High School in Miami, Florida, in 2009 with a grade point average of approximately 3.0. His time in high school was positive, as he had no serious disciplinary issues and never experienced bullying. Adon also participated in extracurricular activities, playing on the school's basketball team. After high school, Adon pursued further education at St. Thomas University in Miami Gardens, where he earned a BBA in sports administration in 2013, again maintaining a GPA of around 3.0. During his undergraduate years, Adon was a peer mentor, helping freshmen navigate the transition from high school to college life.

After completing his undergraduate degree, Adon enrolled in graduate school at St. Thomas University with the intention of earning an MBA. He completed one semester before deciding to pause his education to pursue an opportunity in music management, which he believed was a promising career path

at the time. Adon still hopes to return to graduate school and finish the MBA program in the future. Recently, Adon took an online IT course at Western Governors University, considering a shift toward the IT field as he explores new career opportunities.

<u>Analysis</u>

Adon's educational background reflects a pattern of steady academic performance and involvement in both extracurricular and leadership roles. His 3.0 GPA throughout high school and college demonstrates consistent achievement, and his participation in basketball and peer mentoring suggests a balanced approach to academics and personal development. Adon's decision to pursue a BBA in sports administration aligns with his initial career interests, and his role as a peer mentor highlights his desire to contribute to the academic community and support others.

Although Adon did not complete his MBA, his decision to shift focus to music management indicates adaptability and a willingness to take risks when new opportunities arise. His ongoing interest in returning to graduate school shows a long-term commitment to personal growth and professional development. Adon's recent exploration of the IT field reflects a mindset open to change and lifelong learning. His pursuit of further education in a new field suggests that Adon is continuously assessing his career path and making strategic decisions to align his skills with current market demands.

*Work History*

Adon currently works as an administrative assistant at the City of Hollywood, Florida, Underground Utilities Department., a position he has held since October 2022. Prior to this role, from 2021 to 2022, Adon worked for five or six months as a delivery driver for Amazon. From 2020 to 2021, Adon owned and operated a business called Smart Tax and Finance, which is the subject of his current case.

Between 2016 and 2019, Adam worked at the Marriott Vacation Club in Orlando. During the 2018 and 2019 tax seasons, he also worked part-time at Neighborhood Advanced Tax, contributing to his experience in finance. Before this, from 2015 to 2016, Adam served as an administrative assistant at the City of North Miami in the Community Development Agency Department. In 2014 and 2015, he worked for a music management company called Guess Agency. Adon had left graduate school to pursue this position, believing it would be a major opportunity, but the business ultimately did not succeed.

During his early life, Adon worked various jobs, including call center work, a position at Macy's, and an internship at the University of Miami. These roles provided him with diverse work experience before he moved into more specialized and long-term positions.

<u>Analysis</u>

Adon's employment history reveals a dynamic career path characterized by adaptability and exploration of different fields. His current position as an administrative assistant at the City of Hollywood demonstrates stability and a move toward a steady career in municipal government. This contrasts with other roles, such as his Amazon delivery work and the entrepreneurial venture he took on with Smart Tax and Finance.

Adon's employment history suggests that he is resourceful and willing to take on new challenges, but his career has also been marked by shifts in direction, which may have contributed to the challenges he now faces.

*Physical Health*

Adon is in good health. He has no history of physical health problems and no current physical health problems. He has no surgical history and no history of serious illnesses or injuries. Adon takes no daily medications, and he is not under a physician's care.

*Mental Health*

Adon has never been diagnosed with a mental disorder, and he suffers from no mental health conditions at this time. He has never contemplated suicide or self-harm, and he has never sought mental health treatment.

In 2020, Adon experienced a profound trauma when one of his best childhood friends committed suicide. The loss was devastating, not only due to

their deep friendship but also because Adon had been with his friend just a week before the event. During that visit, Adon noticed his friend had changed; he wasn't the same person Adon had known from childhood. Adon later learned that his friend had struggled with drug addiction and had lost his way in life.

Despite Adon's efforts to stay connected, his friend did not reciprocate. This lack of communication left Adon feeling helpless, believing he could have done more to prevent the tragedy if he had been around more consistently. Adon carries a heavy burden of guilt, replaying moments where he feels he might have been able to intervene. He often experiences flashbacks of the event, though he avoids talking or thinking about it, believing that ignoring the pain is the best way to cope.

<u>Analysis</u>

Adon's traumatic experience is rooted in feelings of guilt, helplessness, and loss. His sense of responsibility for his friend's suicide, despite making efforts to stay connected, highlights a common emotional response to losing someone to suicide: self-blame. The fact that Adon's friend did not reciprocate his attempts at communication amplifies these feelings, leading Adon to believe that had he known the full extent of his friend's struggles, he could have intervened and saved him.

Adon's avoidance of discussing or processing the trauma, coupled with frequent flashbacks, suggests that the event has had a lasting psychological impact.

11

Adon's avoidance of counseling or professional support might hinder Adon's healing process, as unprocessed trauma can lead to long-term emotional distress. Despite this, Adon's believe that he can manage the pain on his own suggests that he feels a strong need for self-reliance, which may be a defense mechanism against the guilt and grief he carries.

*Alcohol and Substance Use or Abuse*

Adon has no history of addiction to any substance. When he drinks alcohol, it is typically in moderation and limited to social settings. Though he experimented with marijuana in the past, his use was infrequent and never developed into a habitual or addictive pattern. Adon has since stopped using marijuana altogether. Beyond this, Adon has never used any other illegal drugs, and he does not take any prescription medications for controlled substances such as painkillers. Overall, Adon has maintained a life free from substance abuse and has not experienced any issues relating to drug or alcohol use.

<u>Analysis</u>

Adon's substance use history indicates a strong ability to moderate his behavior and avoid addiction. His past experimentation with marijuana was brief and did not lead to any patterns of dependence, suggesting that Adon is not predisposed to substance abuse. The fact that he no longer uses marijuana and has never used other illegal drugs speaks to his disciplined approach to managing

substances that could become problematic. Adon's sparing consumption of alcohol in social settings, coupled with his lack of reliance on controlled substances, suggest that he has a health relationship with substances and is unlikely to develop addiction-related issues. This history positions Adon as someone who has likely developed coping mechanisms outside of substance use, even in the face of stress or trauma.

*Future Goals*

Adon wants to start a family and to be a great husband and father. He wants to continue building his relationship with his girlfriend and to be a role model to their future children. Adon hopes to shift careers to the IT/Tech field. To accomplish this goal, he has already been studying for industry certification exams, and he might also attend a trade school to complete IT coursework. Adon would also like to start a juicing company on the side. Juicing is his hobby and passion, and he always preaches about the health benefits of juicing to his family and friends. Adon is a man of faith, and religious faith is very important to him.

### III. Sentencing Position

Typically, the issue therefore before this Honorable Court would be whether an imprisonment sentence within the federal sentencing guideline range is sufficient but not greater than necessary to comply with the law. In this case, the

Defendant submits it is greater than necessary, and a downward variance is warranted.

**IV.     Requests for Judicial Recommendations**

The Defendant understands judicial recommendations are just that – mere judicial recommendations.[2] The Defendant understands there is no guarantee that a judicial recommendation will result in action. However, relevant law and prison policy state more weight is given to a judicial recommendation if there is a factual basis on the record for the judicial recommendation.[3] The Defendant therefore makes the following request for a judicial recommendation and in support offers a supporting factual basis.

A.     Prison Location

If sentenced to a term of federal imprisonment, the Defendant requests a recommendation of as close to Miami, Florida as possible.

---

[3] The Bureau of Prisons welcomes judicial recommendations and, by statute and its own policy, is required to consider them. *See* 18 U.S.C. Section 3621 and Program Statement 5100.08, "Inmate Security Designation and Custody Classification". Pursuant to the above statute, the Bureau of Prisons is required to consider the type of offense, the length of sentence, the defendant's age, the defendant's release residence, the need for medical or other special treatment, any placement recommendation made by the court, and all guidance issued by the United States Sentencing Guidelines. Therefore, while the Bureau of Prisons has the sole authority to designate the place of confinement for federal prisoners, if a defendant's judgment and conviction indicates the district court's preference for housing the inmate within a specific institution, geographic area, or specialized program, it must be considered, and every effort will be made to fulfill the district court's recommendation request should there be reasons on the record to support the request.

One of the professed goals of incarceration is rehabilitation. Frequent family visits will allow the Defendant a better opportunity to successfully matriculate through his imposed prison sentence. Frequent visits will also provide short-term and long-term benefits to the Defendant and to the community to which he will ultimately return.

As a factual basis for this recommendation, the Defendant's family and friends reside in Miami, Florida. The Defendant respectfully requests a prison location as close to Miami, Florida as possible.

## CONCLUSION

WHEREFORE, the Defendant, ADON O. HEMLEY, by and through his undersigned counsel prays this Honorable Court will grant the requested relief and/or any other relief deemed necessary.

Respectfully submitted,

By: /s/ Mark J. O'Brien
Mark J. O'Brien, Esquire
Florida Bar No.: 0160210
511 West Bay Street
Suite 330
Tampa, Florida 33606
T:    (813) 228-6989
E:    mjo@markjobrien.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on July 2, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will then send notice of electronic filing to all counsel of record.

By: /s/ Mark J. O'Brien<br>
Mark J. O'Brien, Esquire