UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        Case No.:  6:24-cr-91-WWB-NWH

DIANDRE T. MENTOR,

    Defendant.
_____/

## DIANDRE T. MENTOR'S SENTENCING MEMORANDUM

## Introduction

This memorandum is submitted on behalf of Mr. Diandre T. Mentor, who stands before this Court for sentencing following his guilty plea to one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. Mr. Mentor accepts full responsibility for his actions and expresses deep remorse for the harm caused by his conduct. He respectfully requests that this Court downward vary and impose a sentence of probation, a punishment that is "sufficient, but not greater than necessary" to achieve the goals of sentencing under 18 U.S.C. § 3553(a).

As this memorandum demonstrates, Mr. Mentor's offense and conduct, while serious, does not define the man he is today. His life is marked by resilience, dedication to family, and a commitment to making amends. A sentence of probation will allow Mr. Mentor to continue his rehabilitation, care for his ailing

1

mother, support grieving wife, and contribute positively to his community, while still holding him accountable for his actions.

## Relevant Factual History

Mr. Mentor's involvement in the offense occurred during a period of vulnerability and poor judgment. In 2015–2016, he was making terrible decisions and recognized that his life was heading in the wrong direction. Aware of the need to change, he sought ways to distance himself from negative influences and start over. Yet, because he was on probation at the time, opportunities for legitimate employment and a new beginning were limited. It was against this backdrop that Mr. Mentor's cousin and co-defendant, Emmanuel Almonor, intervened. Mr. Almonor further exploited this vulnerability, telling Mr. Mentor that no one would hire him with his record. Mr. Mentor erroneously believed his cousin would train him in tax preparation and help him become a business owner. Believing this offered a path to redemption, Mr. Mentor moved to Orlando with the hope of leaving his legal troubles behind. Naïve and eager for a fresh start, he placed his trust in his cousin, only to later realize that the opportunity was not what it seemed.

Mr. Mentor worked for Neighborhood Advance Tax (NAT) under Mr. Almonor's influence and direction from 2017-2019. Although he genuinely believed he was engaging in legitimate tax preparation work, he later became aware of the fraudulent nature of the scheme and failed to withdraw. Mr. Mentor quit working for NAT in 2019, moved back to Miami and stopped speaking to his cousin, Emmanuel Almonor. In 2020, Mr. Mentor started Smart Tax & Finance

(STF) with Adon Hemley. Once again, Mr. Almonor reinserted himself, asking to join STF after falling out with the other owners of NAT, Franklin Carter and Jonathan Carrillo. Almonor promised Mr. Mentor he could help STF with marketing by expanding through franchise offices. Mr. Mentor foolishly agreed and allowed Mr. Almonor to initiate STF's franchise initiative. Mr. Almonor began franchising SFT, personally negotiating those agreements. While Mr. Mentor agreed to participate, believing it would be beneficial for branding, he did not receive any financial benefit from those arrangements.

The financial benefit Mr. Mentor received was minimal in comparison to the overall tax loss. While the conspiracy resulted in an aggregate tax loss of $3,090,077, Mr. Mentor personally realized no more than $60,000. His responsibility, while real, is markedly less than some of the other participants.

Most importantly, Mr. Mentor has expressed deep remorse for his conduct and has taken meaningful steps to make amends, including cooperating with the government and accepting responsibility.

## Sentencing

The Initial Presentence Investigation Report (PSI) calculates Mr. Mentor's total offense level as 24, with a criminal history category of III, resulting in an advisory guideline range of 63 to 78 months of imprisonment. However, the statutory maximum sentence for the offense is 60 months. It is anticipated that the Government will recognize Mr. Mentor's cooperation and will address cooperation at the sentencing hearing.

While the advisory guidelines recommend imprisonment, this Court has the discretion under 18 U.S.C. § 3553(a) to impose a non-custodial sentence when it is sufficient to achieve the purposes of sentencing. For the reasons set forth below, a sentence of probation is appropriate in this case.

### A. History and Characteristics and Nature of Offense

> But, surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics' of the defendant.

*United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006)

18 U.S.C. § 3553(a) recognizes that a sentencing court must look beyond the offense itself and consider the broader context of a defendant's life. *See id*. By requiring that criminal conduct be evaluated alongside a defendant's history and personal characteristics, § 3553(a) reflects a sentencing framework that regards the offense as one part of a larger whole, rather than the defining feature of an individual's identity.

This principle has particular relevance here. In Mr. Mentor's case, weighing the positive aspects of his life against the mistakes made during a period of vulnerability demonstrates that his criminal conduct should not solely dictate his future. Instead, Mr. Mentor's history and characteristics reveal a life defined by perseverance—a steadfast determination that enabled him to rise above significant

early challenges. (See *Letters of Support*)

Mr. Mentor's life has been shaped by adversity. Raised in a single-parent household, he experienced significant instability and financial hardship. Despite these challenges, he pursued higher education and worked tirelessly to support himself and his family. Mr. Mentor is the primary caregiver for his mother, who suffers from multiple serious health conditions, including interstitial lung disease and pulmonary fibrosis. His daily care and emotional support are critical to her well-being. Incarceration would deprive her of this essential support and impose undue hardship on their family.

Mr. Mentor's wife is currently in Italy, shouldering the immense responsibility of caring for her critically ill parents. This situation has placed her under significant emotional strain, compounded by the couple's shared grief over a recent miscarriage. Mr. Mentor's absence would further exacerbate her burden, leaving her without his emotional and practical support during this challenging time.

Mr. Mentor has a long history of community service, including volunteering with organizations such as Space to Grow Charities and The Greatest Investment Girls Empowerment Program. His contributions have positively impacted at-risk youth and underserved communities.

Mr. Mentor has demonstrated genuine remorse for his actions. He pleaded guilty and cooperated with the government. His acceptance of responsibility is further evidenced by his willingness to make restitution to the IRS and his efforts

to educate himself about the consequences of his actions.

### B. Just Punishment

> *All in all, punishment hardens and renders people more insensible; it concentrates; it increases the feeling of estrangement; it strengthens the power of resistance.*

Friedrich Nietzsche, *The Genealogy of Morals*, essay 2, aph. 14 (1887)

Mr. Mentor's request for a probationary sentence is a request for significant punishment. *See Gall v. United States,* 552 U.S. 38 (2007). (a sentence of probation is "a substantial restriction of freedom.").

### C. Deterrence

> *"No punishment has ever possessed enough power of deterrence to prevent the commission of crimes."*

Hannah Arendt, *Eichmann in Jerusalem*, Epilogue (1963)

The preceding section established that a prison sentence is not necessary to accomplish the goal of just sentencing. In turn, this section addresses the question of whether a prison sentence will accomplish deterrence. Such an examination requires an analysis of both general and specific deterrence.

#### I. *General Deterrence*

The Department of Justice (DOJ) has concluded that incarcerating defendants is not an effective means of deterrence. *See* U.S. Dept. of Justice, Nat'l Inst. of Justice, *Five Things About Deterrence* (July 2014). The DOJ has further found that even increasing the severity of punishment does little to deter punishment.

II. ***Specific Deterrence***

Having established that prison sentences, regardless of length, have no impact on general deterrence, this section demonstrates that the factor of specific deterrence also supports Mr. Mentor's request for a variance.

a. ***The relationship between incarceration and recidivism***

There is strong evidence that prison - by disrupting education and employment, reducing prospects for future employment, weakening family ties and exposing less serious offenders to older more serious offenders - leads to increased recidivism. *See Criminogenic Effects of Imprisonment: Evidence from State Panel Data 1974-2002,* 6 Criminology & Public Policy 589 (2007).

Thus, the most effective way to promote public safety and ensure that convicted persons can lead law-abiding lives is through broad use of non-incarceration sentences, especially since "incarceration does little to change a person's behavior" and persons sentenced to prison have higher recidivism rates than those sentenced to community corrections. See National Institute of Corrections, Myths and Facts, Why Incarceration is Not the Best Way to Keep Communities Safe (2016).

b. ***Mr. Mentor's lower risk of recidivism***

Mr. Mentor has been married for 12 years, has stable employment (with a recent promotion), does not have a substance abuse problem, participates in community service, supports his grieving wife and takes care of his sick mother. These factors indicate Mr. Mentor has a lower risk of recidivism.

7

### D. Disparity

In fiscal year 2023, courts returned sentences below the guideline range in 69.1% of all tax cases. Based on the national statistics demonstrating consistent and substantial variances in tax cases, Mr. Mentor respectfully submits that a variance is warranted in his case.

### E. Restitution

*In imposing a sentence, the Court must consider "the need to provide restitution to any victims of the offense"*
18 U.S.C. § 3553(a)(7)

If Mr. Mentor is incarcerated, his ability to pay restitution will be severely impacted. Conversely, a non-prison sentence will allow Mr. Mentor to make restitution. He is gainfully employed and can start restitution payments immediately. *See* 18 U.S.C. §3553(a)(7)(cataloging "the need to provide restitution to any victims of the offense" as one factor to considering formulating sentence). Thus, this § 3553 factor supports the imposition of a probationary sentence with house arrest. *See United States v. Rangel*, 697 F.3d 795, 803-04 (9th Cir. 2012)("the district court's goal of obtaining restitution for the victims of Defendant's offense, 18 U.S.C. § 3553(a)(7), is better served by a non-incarcerated and employed defendant")(citation omitted).

## **CONCLUSION**

Mr. Mentor stands before this Court humbled by his actions and determined to make amends. He has shown the potential for meaningful rehabilitation and a commitment to positive change. A sentence that considers his personal

circumstances, remorse, and contributions would serve the interests of justice and humanity while mitigating the profound impact his absence would have on his family. He respectfully requests that the Court impose a sentence of probation, which will allow him to continue his rehabilitation, pay restitution, support his grieving wife and care for his sickly mother, and contribute positively to his community. Such a sentence is consistent with the principles of federal sentencing and reflects the belief that justice is best served by balancing accountability with compassion.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel in this case on August 21, 2025.

*/s/ Alisia Adamson*
Alisia Adamson
Florida Bar Number 160767
HAWM Law
641 N. Rio Grande Ave
Orlando, Florida 32805
Telephone 407-802-3223
Facsimile 407-377-1971
Email: aadamson@hawmlaw.com